**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **LOGAN T.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 20-1330-JWL** |
| **KILOLO KIJAKAZI,**[2] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) consideration of Plaintiff's Gitelman's Syndrome and her evaluation of Plaintiff's allegations of disabling symptoms, the court ORDERS that judgment shall be entered

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.      Background**

Plaintiff protectively filed applications for DIB and SSI benefits on December 27, 2018. (R. 21, 228, 235). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in considering his Gitelman's Syndrome and in failing to assess properly his allegations of disabling symptoms.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

3

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.    Consideration of Gitelman's Syndrome

Plaintiff argues the ALJ erred in finding his Gitelman's Syndrome is not a severe impairment. He argues the ALJ's finding is erroneous because she found "no indication of related functional problems" from the Gitelman's Syndrome. (Pl. Br. 7) (quoting R. 24). He claims this is error because he has hypokalemia (low potassium levels) and syncopal episodes as a result of his Gitelman's Syndrome resulting in blackouts, falls,

and hospitalization. (Pl. Br. 8). He points to the state agency medical consultants' finding severe disorders of the urinary tract and argues the ALJ's finding these prior administrative medical findings persuasive conflicts with her not finding the disorders severe and requires remand. Id. at 9. Plaintiff implies the ALJ misunderstood Dr. Barclay's opinion which she found unpersuasive and argues Dr. Barclay later submitted a clarifying opinion letter which the Appeals Council should have made a part of the record evidence and considered in its review. Id. 9-11.

In response, the Commissioner points out that if the ALJ finds a severe impairment at step two of her evaluation, the fact that she does not find another impairment severe within the meaning of the Act and regulations is not cause for remand so long as she considers in her later analysis the functional limitations caused by all the claimant's medically determinable impairments, both severe and non-severe. (Comm'r Br. 9-10). She argues the primary issue with Plaintiff's Gitelman's Syndrome was the resulting syncope which the ALJ focused on and assessed seizure precautions in the RFC to account for this issue. Id. at 11. She argues there is no inconsistency with the state agency physicians finding the Gitelman's Syndrome severe because the ALJ found the resulting syncope severe and the syndrome itself not severe because it caused no further functional limitations. Id. 11-12. The Commissioner argues Dr. Barclay's letter submitted to the Appeals Council was merely cumulative of his earlier opinion and is therefore not new evidence withing the meaning of the Act and regulations.

**A.**     **Step Two Standard for Evaluating Impairments**

An impairment is not considered severe if it does not significantly limit a claimant's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522, 416.922. The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, a claimant must make only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). Plaintiff need only show that an impairment would have more than a minimal effect on his ability to do basic work activities. Williams, 844 F.2d at 751. However, he must show more than the mere presence of a condition or ailment. Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on Plaintiff's ability to do basic work activities, it could not prevent him from engaging in substantial work activity and will not be considered severe. Hinkle, 132 F.3d at 1352. The failure to find additional impairments are severe is not in itself cause for reversal. But this is true only so long as the ALJ considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Hill v. Astrue, 289 F. App'x. 289, 291-92, (10th Cir. 2008); see also, 20 C.F.R. §§ 404.1523, 416.923 (explaining that the combined effect of all impairments, even those which are not severe, will be considered throughout the disability determination process).

**B.** **The ALJ's Relevant Findings**

6

The ALJ found Plaintiff has severe impairments of "convulsive syncope/orthostatic hypotension, lumbar spine degenerative disc disease, and cervical spine degenerative disc disease." (R. 23). She found Plaintiff has non-severe impairments of "Gittleman's [sic] syndrome, cannabis use, and major depression" but, "there is no indication of related functional problems." Id. at 24. She stated, "The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." Id. The ALJ found Dr. Barclay's opinions unpersuasive as they were "not supported by or consistent with the medical evidence of record, including Dr. Barclay's own examinations of the claimant." Id. at 25-26, see also R. 32 ("this opinion is not consistent with or supported by the medical evidence of record, including Dr. Barclay's own examinations of the claimant"). She noted Dr. Barclay's opinion stating Plaintiff is disabled is unpersuasive because that is an issue reserved to the Commissioner. Id. 32. The ALJ found the state agency physicians' opinions, particularly their exertional limitations, persuasive because they were supported by and consistent with the medical evidence but she found Plaintiff additionally limited in needing opportunity to change positions as often as every 30 minutes. Id. at 31-32.

After summarizing the record medical evidence, the ALJ concluded:

In sum, the record lacks medical evidence to support the claimant's allegations of his limitations. The evidence shows that while the claimant does have physical impairments that result in significant functional limitations, and which warrant some work restrictions, the evidence does not indicate that his conditions result in debilitating functional limitations. On the contrary, despite his impairments, the evidence indicates that the

>claimant is capable of performing work that is consistent with the above residual functional capacity assessment.

(R. 30).  After evaluating the persuasiveness of the medical opinions and prior administrative findings of fact, the ALJ stated her conclusion:

>In sum, the facts contained in the record do not dispute that the claimant has conditions, which singly or in combination, may cause functional limitations.  What the evidence suggests, however, is that the claimant's symptoms may not exist at the level of severity asserted by the claimant's testimony at hearing, and do not have the negative impact upon the claimant's ability to engage in work activity that has been alleged.  The above residual functional capacity, as determined by the undersigned, considers the reliable evidence regarding the extent of the claimant's functional impairment.

Id. 32.

### **C.**     **Analysis**

Plaintiff's argument that the ALJ erred in failing to find Gitelman's Syndrome a severe impairment fails because the decision makes clear she considered limitations from Gitelman's Syndrome when assessing RFC.  More is not required.  Plaintiff's argument the ALJ found no related functional problems from Gitelman's Syndrome ignores that the ALJ found the severe impairment of convulsive syncope/orthostatic hypertension and limited Plaintiff to "a sit/stand option at the workstation with the ability to change positions as frequently as every 30 minutes and then return to the same or to a different position without a loss of productivity" and to "avoid all exposure to vibration and hazards including unprotected heights and machinery with moving mechanical parts." (R. 27) (finding no. 5, bold omitted).  The state agency physicians attributed their opined limitations (found persuasive by the ALJ) to "Gittleman's [sic] disease with syncope" (R.

8

87-88, 100-01, 115-17, 129-31), and the ALJ attributed her more restrictive limitations to Plaintiff's "description of syncopal and near-syncopal episodes." (R. 32). The ALJ's severity finding does not conflict with the state agency physicians' opinions.

Plaintiff's real argument is that the ALJ did not include sufficient limitations in the RFC assessed to account for Plaintiff's Gitelman's Syndrome. Therefore, the real question here is whether the limitations the ALJ assessed are supported by the record evidence. Plaintiff appeals to Dr. Barclay's opinion to show greater limitations than assessed by the ALJ and implies the ALJ misunderstood Dr. Barclay's opinion. However, the ALJ explained why she found Dr. Barclay's opinion unpersuasive, the record supports those reasons, and Plaintiff does not point to record evidence compelling a contrary finding. Although Dr. Barclay diagnosed "periodic paralysis from hypokalemia" (R. 663), the ALJ acknowledged Plaintiff's hospitalization with hypokalemia and hypomagnesium, but recognized that Plaintiff improved, went home in stable condition, and noted no further episodes of loss of consciousness the next month. (R. 29).

Plaintiff's appeal to Dr. Barclay's letter opinion presented to but not exhibited by the Appeals Council produces no better result. As Plaintiff suggests, the Appeals Council did not exhibit and consider Dr. Barclay's letter dated August 6, 2020 because it does not relate to the period at issue and "does not affect the decision about whether you were disabled beginning on or before April 3, 2020." (R. 2). As Plaintiff points out, subject to certain exceptions the Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the

9

hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a).  Plaintiff acknowledges that evidence is not new within the meaning of the regulations if it is duplicative or cumulative of evidence already in the record.  (Pl. Br. 10); see also, Heimerman v. Chater, 939 F. Supp. 832, 833-34 (D. Kan. 1996).   Moreover, Plaintiff must show good cause for the failure to obtain and present the evidence at the ALJ hearing.  Heimerman, 939 F. Supp. 833-34; see also, 20 C.F.R. § 404.970(b).   Dr. Barclay's letter opinion is cumulative of his opinions dated February 5, 2020 and previously included in the record.  (R. 663-71).  Dr. Barclay's letter opinion discusses his treatment of Plaintiff over the last 20 years and relates specifically to his condition over the last few years.  (R. 11-12).  To the extent it may contain information not duplicated within the record evidence, Plaintiff has made no showing of good cause for his failure to present that information to the ALJ in accordance with the regulatory requirements.  The Appeals Council did not err in failing to exhibit this letter opinion.

## III.     Evaluation of Plaintiff's Allegations of Disabling Symptoms

Plaintiff states the ALJ discounted his allegations of disabling limitations because "she believed his treatment to be routine and conservative and because she believed his activities of daily living to be inconsistent with his testimony [but these] reasons were not supported by the record and were insufficient to discount [Plaintiff]'s allegations."  (Pl. Br. 12-13).  Plaintiff points to record evidence which in his view demonstrates his allegations of symptoms are consistent with and supported by the record, argues the

ALJ's analysis fails to consider the evidence properly and she should have accepted his allegations. (Pl. Br. 14-17).

The court's review finds the ALJ's evaluation of Plaintiff's allegation is in accordance with Social Security Ruling 16-3p and is supported by the record evidence. Even were the court to accept that the ALJ discounted Plaintiff's allegations because of routine and conservative treatment and because of his daily activities and that these reasons are not supported by the record evidence (which it does not), it would not find reversible error in the decision. Plaintiff ignores the ALJ's other reasons to discount his allegations of symptoms and makes no attempt to controvert them. The ALJ discounted Plaintiff's allegations of disabling symptoms for several additional reasons: "[T]he claimant's allegations of disabling limitations are not fully supported by or consistent with the objective medical evidence and examination findings as noted" in the summary of evidence earlier in the decision. (R. 30). "[T]here are no findings showing decreased strength, range of motion, loss of sensation, or abnormal gait." Id. Plaintiff's application for unemployment insurance and "indication he was available to work is inconsistent with allegations of an inability to work full-time, and shows that the claimant's symptoms are not as severe as his allegations would indicate," id., and his claiming "availability to work when he believed he was unable to work indicates a willingness to state what needs to be said, whether or not truthful, to receive benefits." Id. at 31. As Plaintiff acknowledged in his brief, the court's review of the Commissioner's evaluation of a claimant's allegations of symptoms is deferential, and Plaintiff's arguments do not overcome the deference due.

Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated January 18, 2022, at Kansas City, Kansas.

                                        s:/ *John W. Lungstrum*
                                        **John W. Lungstrum**
                                        **United States District Judge**